# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01205-SCT

*BYRON PERRY a/k/a BYRON LEVAR PERRY a/k/a*
*BYRON L. PERRY*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 07/22/2015
TRIAL JUDGE: HON. LEE SORRELS COLEMAN
TRIAL COURT ATTORNEYS: SCOTT ROGILLIO
KRISTEN W. WILLIAMS
COURT FROM WHICH APPEALED: CLAY COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF THE STATE PUBLIC DEFENDER
BY: JUSTIN T. COOK
GEORGE T. HOLMES
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: LAURA H. TEDDER
DISTRICT ATTORNEY: SCOTT WINSTON COLOM
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 06/01/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. In the Circuit Court of Clay County, a jury convicted Byron Perry of aggravated assault and possession of a weapon by a previously convicted felon. The circuit court sentenced him as a habitual offender to twenty years for the aggravated-assault conviction and ten years for the weapon conviction, to run consecutively. Perry appeals, arguing that

his constitutional and statutory rights to a speedy trial were violated and that the evidence was insufficient to support the trial court's finding that he was a habitual offender.

¶2.    We hold that Perry's constitutional and statutory rights to a speedy trial were not violated. Further, we find no merit in Perry's argument that one of the two sentencing orders submitted by the State was insufficient to support a finding beyond a reasonable doubt that Perry was sentenced to one year or more and qualified as a habitual offender under Mississippi Code Section 99-19-81. Therefore, this Court affirms Perry's convictions and sentences.

**FACTS**

¶3.    In the fall of 2009, Shetamarah "Tamie" Willis met Perry, a sometime construction worker and gravedigger, at a nightclub in Columbus, Mississippi. The two embarked on a relationship that was physically intimate but not exclusive. Willis also was involved romantically with James Henry. In April 2010, Willis told Perry that she did not want to take their relationship any further because she was getting serious with Henry. Nonetheless, at around 8:00 p.m. on May 23, 2010, Perry and his cousin, Alvin Franklin, visited Willis's home in West Point and the three watched a movie. After the movie, Perry and Franklin left, but Perry shortly returned alone. At this point, Perry and Willis were alone in the house, because Willis's daughter, who resided there, was spending the night with her aunt. During the visit, Perry noticed that Willis's bags had been packed and placed in the living room. Willis explained that she and Henry were about to leave together for the Black Bike Week motorcycle rally in Myrtle Beach, South Carolina.

¶4. According to Willis, she and Perry then watched another movie, after which they fell asleep. When Willis awoke, she thought Perry had left. The aunt dropped off Willis's daughter, and Willis left home briefly to take her daughter to her mother's house for the day. Willis then got ready for work. She was in the kitchen making a sandwich to take to work when she looked up and saw Perry standing in the living room. He was staring at Willis with a "funny look" on his face, and she asked him if he was going crazy. Abruptly, he raised a handgun and fired a shot at her. The shot missed Willis, whereupon Perry grabbed her and the two began tussling in the kitchen. During the struggle, Willis's shoulder was burned by the hot muzzle of the gun. At some point, Perry tried to cock the gun, but the clip fell out, spilling cartridges across the kitchen floor. Willis managed to escape Perry's grasp and bolted from her home. Panicked, she ran directly into the home of her neighbor.

¶5. Willis testified that she ran inside her neighbor's home with full knowledge that the neighbor, Heather McClure, kept a blue nose pit bull guard dog inside the home, and that this dog "probably would get" her. Indeed, as soon as Willis closed the door, the dog attacked and bit her leg. As Willis testified, her thinking was "I didn't want to get killed. I would rather get bit." McClure heard Willis screaming, called off the dog, then called the police. When the police arrived a few minutes later, Willis, still panicked, informed them that Perry had shot at her. She testified that, before the shooting, Perry always had seemed like a nice fellow and that she never had felt threatened by him. Photographs of Willis's injuries from both gun and dog were admitted into evidence.

¶6.     Perry next was spotted on the doorstep of Classie Hatchett, who lived about a mile from Willis. About 10:00 o'clock that morning, a man matching Perry's description knocked on Hatchett's door and said that someone in a black car was after him with a gun. He asked her to call the police and also for a glass of water. Hatchett closed and locked the door and called the police. When she returned, the man was gone. She testified that the man was hot and sweaty and out of breath, as if he had been running. At trial, Hatchett identified Perry as the hot and sweaty man.

¶7.     Perry turned himself in the next day. The police recovered one .380 spent shell casing from just inside Willis's living room and three .380 unfired rounds from the kitchen floor. A photograph of a bullet hole in the kitchen wall was admitted into evidence. The gun never was recovered. The parties stipulated that Perry was a prior convicted felon on the date of the alleged crime, and the jury found Perry guilty of aggravated assault and possession of a weapon by a previously convicted felon. After reviewing the State's evidence of Perry's prior convictions, the trial court determined that Perry was a habitual offender and sentenced him to the maximum penalty for each crime, to be served consecutively and without eligibility for parole or probation.

**DISCUSSION**

I. WHETHER THE APPROXIMATELY FIVE-YEAR DELAY BETWEEN INDICTMENT AND TRIAL VIOLATED PERRY'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

¶8.     A criminal defendant is guaranteed "the right to a speedy and public trial" by the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; U.S. Const. amend.

XIV. Additionally, the Mississippi Constitution guarantees the defendant "a speedy and public trial by an impartial jury of the county where the offense was committed." Miss. Const. art 3, § 26. This Court applies the four-part balancing test from *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to constitutional speedy-trial claims. That test requires balancing four factors to determine whether the right to a speedy trial was violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy-trial right; and (4) prejudice to the defendant. *Id.* at 530, 92 S. Ct. 2182. Under *Barker*, each case must be considered on an *ad hoc* basis, and no single factor is outcome-determinative. *Id.* at 530, 533. Instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Because the factors are not talismanic, "courts must still engage in a difficult and sensitive balancing process." *Id.*

¶9.     "The state bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion." *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998). On review of the trial court's ruling on a speedy-trial claim, this Court "will uphold a decision based on substantial, credible evidence." *Id.* We will reverse if no probative evidence supports the trial court's good-cause finding. *Id.* In this case, Perry filed three motions for a speedy trial, but he never secured from the trial court a ruling on the motions. This Court has held that, when the defendant has asserted his speedy-trial right but the trial court did not hold an adequate hearing, we have two alternatives: "(1) decide the case based on a *de novo* review of the record before us, if good cause for the delay is apparent, or (2) remand the case

5

to the circuit court to allow the State to present evidence explaining the delay and to conduct a proper **Barker** analysis." **Rowsey v. State**, 188 So. 3d 486, 493 (Miss. 2015). Because, in this case, good cause for the delay is apparent from the record, remand is unnecessary.

### A. Length of Delay

¶10.    The constitutional right to a speedy trial attaches at the time of formal indictment or information, or when the defendant is arrested. **Smith v. State**, 550 So. 2d 406, 408 (Miss. 1989). We have held that a delay of eight months or longer is presumptively prejudicial and triggers the need for balancing the other three **Barker** factors. *Id.* Perry was arrested on May 25, 2010. He was not indicted until October 11, 2010. The next day, Perry waived arraignment, and his trial was set for January 11, 2011. But due to a series of continuances, he was not tried until July 21, 2015, a delay of approximately five years and two months. This period of delay, far exceeding eight months, was presumptively prejudicial.

### B. Reason for the Delay

¶11.    "Different reasons for delay are assigned different weights." **Hurst v. State**, 195 So. 2d 736 (Miss. 2016) (quoting **Bateman v. State**, 125 So. 3d 616, 629 (Miss. 2013)). If the State deliberately attempts to thwart the defense by delaying the trial, that delay is weighed heavily against the State. **Barker**, 407 U.S. at 531, 92 S. Ct. 2182. But delay due to negligence or docket congestion is given less weight against the State. *Id.* An appropriate delay caused by a missing witness would be considered a justified delay. *Id.* Importantly, "[a] delay caused by the actions of the defendant, such as a continuance, tolls the running of the time period for that length of time, and is subtracted from the total amount of the delay."

*Taylor v. State*, 672 So. 2d 1246, 1259 (Miss. 1996); *see Barker*, 407 U.S. at 529, 92 S. Ct. 2182.

¶12.    The record reflects a delay of 140 days between Perry's arrest on May 25, 2010, and his indictment on October 11, 2010. The next day, his trial was set for January 11, 2011. If Perry's trial had occurred as scheduled, he would have received a presumptively speedy trial. But on January 11, 2011, defense counsel moved for additional time to investigate, and the trial court granted a continuance. The trial court continued the case twice more due to defense requests for time to investigate. On November 18, 2011, Perry moved for a speedy trial. But on January 9, 2012, he moved for a continuance because he was awaiting a mental evaluation on a separate Oktibbeha County charge. On April 11, 2012, the trial court granted another defense request for a continuance because of counsel's responsibilities in another trial. On July 20, 2012, defense counsel George Thad Buck moved for a continuance due to his major surgery. The trial court granted the motion and set the trial for October 8, 2012. On July 24, 2012, Buck filed a notice of his resignation as public defender. With new defense counsel, Perry requested a continuance on October 9, 2012, because new counsel had a trial the same day and needed additional time to prepare for Perry's trial. On April 3, 2013, the defense sought and was granted another continuance because "another trial had begun," and the trial was set for October 16, 2013.

¶13.    On October 15, 2013, the trial court granted a motion for a mental evaluation of Perry, filed by his former counsel. The trial court also granted Perry's motion for a continuance to procure the mental evaluation and for new counsel to have additional time to prepare. While

7

awaiting completion of the mental evaluation, the trial court continued the case three times. On September 9, 2014, the report of the mental evaluation was filed with the trial court. At a competency hearing on October 13, 2014, the trial court determined that Perry was mentally competent to stand trial. At that hearing, defense counsel requested that the trial be set for the next available date, and the trial court entered an order setting the case for trial on April 6, 2015. On March 30, 2015, Perry moved for a speedy trial, or in the alternative, to dismiss for lack of a speedy trial. The trial court's docket reflects that the trial court entered an order of continuance on April 7, 2015, setting the trial for July 20, 2015. No reason for this continuance appears in the record. On June 10, 2015, Perry again demanded a speedy trial or, in the alternative, to dismiss the case for lack of a speedy trial. His trial occurred on July 21-22, 2015. Before the trial began, defense counsel requested a continuance to locate a missing witness. The trial court refused to continue the case, but the witness, Alvin Franklin, was found and testified in Perry's defense.

¶14.    It is manifest that the vast majority of the delay in this case was attributable to continuances generated by the defense. After the initial continuance, defense counsel requested further continuances to obtain additional time to prepare for trial, or due to responsibilities in other cases. Defense counsel's resignation from the case due to major surgery caused further delay. Then, the trial court ordered a mental evaluation, resulting in an additional year of delay while Perry awaited completion of the report and the competency hearing. When the competency hearing occurred on October 13, 2014, defense counsel requested additional time to prepare for trial, and the trial court granted another continuance

8

until the next available trial date, which was April 6, 2015. On April 7, 2015, another continuance was granted, for unknown reasons.

¶15. Delay attributable to the defense tolls the running of the speedy-trial clock. *Taylor*, 672 So. 2d at 1259. Therefore, delay attributable to Perry's numerous requests for continuances is not weighed against the State. And this Court has held that delay attributable to obtaining a mental evaluation requested by the defense is not counted against the State. *Rowsey v. State*, 188 So. 3d 486, 495 (Miss. 2015). As the State points out, Clay County, which is in the Sixteenth Circuit Court District, has only four ten-day terms of court per year: the second Monday of January, ten days; the first Monday of April, ten days; the second Monday of July, ten days; and the first Monday of October, ten days.[1] Due to the limited number of days available to try cases, every defense request for a continuance caused Perry's trial to be continued to the next quarterly term of court or later, if trials already had been set for the next term of court.

¶16. A minimal amount of the total delay was attributable to the State. The grand jury issued the indictment against Perry 140 days after his arrest. Another 93 days elapsed between the indictment and Perry's first trial setting. And another 106 days passed between the unexplained April 7, 2015, continuance and Perry's trial on July 21, 2015. Delays that are

---

[1] Miss. Secretary of State, Miss. Judiciary Directory and Court Calendar (2016). According to Mississippi Code Section 9-7-3, "[n]otice of the dates upon which the terms of court shall commence and the number of days for which the terms shall continue in each of the counties within a circuit court district shall be posted in the office of the circuit clerk of each county within the district and mailed to the office of the Secretary of State for publication and distribution to all Mississippi Bar members." Miss. Code Ann. § 9-7-3 (Supp. 2016).

9

unexplained are weighed against the State. ***Vickery v. State***, 535 So. 2d 1371, 1377 (Miss. 1988). The record reflects that, of the approximately five-year delay between Perry's arrest and his trial, 339 days were attributable to the State, and 1,548 days were attributable to Perry. Because the vast bulk of the delay was caused by continuances requested by Perry, the reason for the delay weighs against him.

*C. Defendant's Assertion of the Right to a Speedy Trial*

¶17.   The defendant's assertion of the right to a speedy trial is counted in his favor. ***Rowsey***, 188 So. 3d at 495. But "a defendant's assertion of his speedy trial rights should manifest 'his desire to be tried promptly.'" ***Id.*** (quoting ***Franklin v. State***, 136 So. 3d 1021, 1035 (Miss. 2014)). When a defendant moves for a speedy trial but simultaneously requests a continuance, the defendant's speedy-trial request cannot be viewed as a request to be tried promptly. ***Rowsey***, 188 So. 3d at 495. Perry, already having requested several continuances, first asserted his right to a speedy trial on November 18, 2011. On that date, his trial was set for January 9, 2012. On January 9, 2012, he moved for another continuance, then requested and obtained five more continuances before the trial court ordered the mental evaluation on October 15, 2013, which led to another year of delay. After the mental-evaluation report was filed and the competency hearing occurred, defense counsel requested yet another continuance to prepare for trial. Thus, although Perry had demanded a speedy trial, his November 18, 2011, demand did not "manifest a desire to be tried promptly."

¶18.   Perry also filed speedy-trial demands on March 30, 2015, and June 10, 2015. He was tried on July 21, 2015. This Court has held that assertion of the speedy-trial right two months

10

prior to trial does not cause this factor to weigh against the State. ***Wall v. State***, 718 So. 2d 1107, 1113 (Miss. 1998). Perry's second and third speedy-trial demands were made after more than four years' worth of delay caused by defense continuances. The trial court continued the trial for an unknown reason between his second and third demand. We find that, due to the timing of Perry's second and third speedy-trial demands, this factor weighs only slightly in favor of Perry.

*D. Actual Prejudice*

¶19.    ***Barker*** held that the denial of a speedy trial may result in prejudice when the interests protected by the speedy-trial right are impacted by the delay. ***Barker***, 407 U.S. at 532, 92 S. Ct. 2182. ***Barker*** identified three interests protected by the denial of speedy trial: (1) the prevention of oppressive pretrial incarceration; (2) minimization of the defendant's anxiety and concern; and (3) the possibility of an impaired defense. ***Id.*** "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." ***Id.*** Additionally, the stress and anxiety of awaiting trial and restraints on liberty can cause prejudice, even if the defendant is not incarcerated. ***Id.*** at 532-33.

¶20.    Perry argues that he was prejudiced because, three years after he was indicted, the State moved to amend his indictment to charge him as an habitual offender. The trial court granted the State's motion to amend. He contends that, but for the delay, his indictment would not have been amended. He also argues that actual prejudice resulted from the stress and anxiety of waiting for trial.

11

¶21. The record reflects that, after Perry's arrest, he was released on bail but, on January 31, 2011, his bail was revoked because he had been charged with committing an armed robbery in Oktibbeha County during his release. Perry remained incarcerated until the trial in this case; the disposition of the armed-robbery charge is unknown. However, that charge did not result in one of the convictions used to enhance Perry's sentence. Instead, the State relied on two convictions that occurred before Perry's arrest in this case. In *Smith v. State*, 550 So. 2d 406, 406-07, 409 (Miss. 1989), this Court found that the defendant had been prejudiced when he was reindicted as a habitual offender using a conviction that had arisen during the delay before trial. Because Perry already had the two prior convictions the State used to enhance his sentence, the State could have used those convictions to seek his indictment as a habitual offender at its presentment of the case to the grand jury. Therefore, Perry has not shown prejudice regarding the habitual-offender amendment. Further, the record reveals no missing witnesses, faded memories, or other detriment to the defense caused by the delay. And Perry himself requested the continuances that caused the majority of the delay to prepare his case and to procure a mental evaluation. Any anxiety or stress that Perry experienced due to the delay was outweighed by the fact that his defense was assisted, not hindered, by the delay. *See Rowsey*, 188 So. 3d at 496. We find that this factor weighs against Perry.

¶22. We find that, despite the approximately five-year delay in this case, a *de novo* review of the record under the *Barker* factors indicates good cause for the delay, and that Perry's constitutional right to a speedy trial was not violated.

12

II. WHETHER THE DELAY IN BRINGING PERRY TO TRIAL VIOLATED HIS STATUTORY SPEEDY-TRIAL RIGHT.

¶23.    Under Mississippi Code Section 99-17-1, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2015). We have held that "continuances for 'good cause' toll the running of the 270-day period, unless 'the record is silent regarding the reason for the delay,' and then 'the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue.'" *Reynolds v. State*, 784 So. 2d 929, 933 (Miss. 2001) (quoting *Herring v. State*, 691 So. 2d 948, 953 (Miss. 1997)). "A written order stating that a motion for continuance is well taken and should be granted is the equivalent of a judicial determination that good cause exists." *Reynolds*, 784 So. 2d at 933. When such continuances are granted to the State, the statutory speedy-trial clock is tolled, and the time is deducted from the total number of days before trial for the purposes of the statutory time calculation. *Id.*

¶24.    Perry contends that his statutory speedy-trial right was violated because he waived arraignment on October 12, 2010, and he was not tried in 270 days. However, Perry requested numerous continuances, and the trial court found that these requests were well-taken. Thus, good cause existed for the 1,548 days that were attributable to the continuances granted to the defense, and that number of days must be deducted from the statutory time calculation. After the deduction, 198 days remained between Perry's arraignment and his trial. There was no statutory speedy-trial violation.

13

III. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S FINDING THAT PERRY WAS A HABITUAL OFFENDER.

¶25. Next, Perry argues that the State failed to show his habitual-offender status beyond a reasonable doubt. The State counters that this argument is procedurally barred because Perry failed to object to habitual-offender sentencing. A defendant's failure to object to habitual-offender sentencing operates as a procedural bar to the issue on appeal. *Cummings v. State*, 465 So. 2d 993, 995 (Miss. 1985). However, when a defendant's substantive or fundamental rights are affected, this Court will review an issue for plain error, that is, an error that is plain, clear, or obvious and prejudiced the outcome. *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013). A defendant has a fundamental right to be free from an illegal sentence, which "is one that 'does not "conform to the applicable penalty statute.'" *Id.* (quoting *Foreman v. State*, 51 So. 3d 957, 962 n.22 (Miss. 2011)). Still, we find no plain error here.

¶26. On October 15, 2013, the trial court granted the State's motion to amend the indictment to charge Perry as a habitual offender. The amended indictment charged that Perry had two prior felony convictions for which he had been sentenced to serve one year or more: a Cobb County, Georgia, conviction on November 3, 2003, for theft by receiving stolen property; and a Lowndes County, Mississippi, conviction on December 4, 2003, for the unlawful taking of a motor vehicle.

14

¶27. At Perry's sentencing hearing, the State introduced documentation of the two prior convictions to show that he was a habitual offender under Mississippi Code Section 99-19-81. That section provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and *who shall have been sentenced to separate terms of one (1) year or more* in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2015) (emphasis added). Under Section 99-19-81, the length of time served by the convicted is irrelevant so long as he or she was sentenced to one year or more. *See id*; *see also **Jackson v. State***, 381 So. 2d 1040, 1042 (Miss. 1980). The State bears the burden of proving a defendant's habitual-offender status beyond a reasonable doubt. *See **Connor v. State***, 138 So. 3d 143, 151 (Miss. 2014).

¶28. The record clearly shows that Perry was sentenced to one year, one month, and twenty-seven days for his prior felony conviction in Georgia. Therefore, the only issue is whether Perry was sentenced to one year or more for his prior, Lowndes County conviction. For this conviction, the State submitted a certified copy of the sentencing order, which provided:

> *Thereupon, the defendant was sentenced by the Court to serve a term of three (3) years in the custody of the Mississippi Department of Corrections under the terms and conditions of Section 47-7-47 M.C.A. (1972), including the Regimented Inmate Discipline Program (RID)* . . . . Further, if the defendant successfully completes the RID Program, the defendant is to be transported from the RID program to the Lowndes County jail to await re-sentencing.

15

(Emphasis added.) The trial court sentenced Perry as a habitual offender.

¶29. We discern no error, much less plain error, from the trial judge's sentencing of Perry as a habitual offender. The face of this Lowndes County sentencing order plainly and unambiguously shows that Perry was sentenced to three years in the custody of the Mississippi Department of Corrections for this conviction.

¶30. Based on the latter half of this order, Perry, as well as the dissent, conclude that his three-year sentence was contingent upon Perry's failure to complete the RID program, and therefore indeterminate. Continuing from this logic, they then find that the State must provide evidence that a defendant, who is given the opportunity to complete a RID or similar program, did *not* complete the program in order to show the defendant's habitual-offender status.

¶31. First, Perry's sentence was not contingent upon anything. Rather, Perry's *opportunity to be resentenced* was contingent upon his successful completion of the RID program. Second, the State is not required to show that a defendant failed to fulfill the requirements of a RID or similar program in order to prove habitual-offender status. To be clear, we recognize that the State bears the burden of proving a defendant's habitual-offender status beyond a reasonable doubt. *See Connor v. State*, 138 So. 3d 143, 151 (Miss. 2014). Such burden, however, does not require the State to prove a negative (i.e, that the defendant did *not* fulfill a prior contingency offered to him). By this same logic, the State would be required to prove that a defendant has not filed a successful petition for post-conviction relief, has not been pardoned, or has not successfully had his conviction reversed in order to show habitual-

16

offender status. We find, instead, that the proper time for the introduction of such evidence is when the defendant is "afforded a reasonable opportunity to challenge the State's proof." *Id*.

¶32.    As an aside, the record also suggests that Perry did not complete the RID program. At Perry's sentencing hearing in the case at hand, the prosecutor noted that "[Perry] was convicted [in Lowndes County] of taking a motor vehicle, and he was sentenced to three years. Although he was recommended for the RID program, he was still – received a three-year sentence. And I believe even later, though, he was revoked on that order, also, Your Honor." Even more, Perry's brief to this Court never claimed that he had completed the RID program and was resentenced to less than one year.[2]

**CONCLUSION**

¶33.    Perry's constitutional and statutory rights to a speedy trial were not violated, and no plain error occurred from his sentencing as a habitual offender. We affirm Perry's convictions and sentence.

¶34.    **COUNT I:  CONVICTION OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  APPELLANT SHALL PAY COURT COSTS AND A FINE IN THE AMOUNT OF $1,200.  COUNT II:  CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II.  SAID**

---

[2]Our opinion is not intended to address the merits of a claim by a defendant who has completed the RID program and been resentenced to less than one year.

17

SENTENCES SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.

WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶35. I respectfully concur in part and dissent in part. I agree that, because no speedy trial violation occurred, Perry's convictions of aggravated assault and the weapon charge must be affirmed. But I disagree that Perry's Lowndes County sentencing order was sufficient to support the trial court's finding beyond a reasonable doubt that he had been sentenced to one year or more for that conviction. Because the State failed to meet its burden to prove Perry's habitual offender status beyond a reasonable doubt, I would vacate the habitual offender enhancement and remand for resentencing without the enhancement.

¶36. In *Conner v. State*, 138 So. 3d 143, 151 (Miss. 2014), this Court thoroughly explained the habitual offender sentencing process. "When the defendant is indicted as a habitual offender, '[a] jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof.'" *Id.* (quoting *Seely v. State*, 451 So. 2d 213, 215 (Miss. 1984)). At a separate habitual offender sentencing hearing, the State must prove each element in the habitual offender statute beyond a reasonable doubt, and the defendant must be afforded a reasonable chance to challenge the State's proof. *Id. Conner* noted that "there appears to be some tendency to routinely allow the state to produce some

18

documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated . . . ." *Id.* (quoting *Young v. State*, 507 So. 2d 48, 50 (Miss. 1987)). The Court stressed that "a bifurcated trial means a full two-phase trial prior to any finding that the defendant is an habitual offender and subject to enhanced punishment." *Id.* (quoting *Young*, 507 So. 2d at 50).

¶37. At Perry's sentencing hearing, the trial court found from two sentencing orders submitted by the State that Perry was a nonviolent habitual offender pursuant to Mississippi Code Section 99-19-81. That statute provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and *who shall have been sentenced to separate terms of one (1) year or more* in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2015) (emphasis added). As the majority notes, the State proved that Perry received a sentence of more than one year for a conviction of a theft by receiving stolen property in Georgia. The State also produced a sentencing order for a Lowndes County conviction for unlawful taking of a motor vehicle, and Perry argues that this sentencing order, standing alone, was insufficient to have enabled the trial court to find him an habitual offender beyond a reasonable doubt. The Lowndes County sentencing order provided:

> Thereupon, the defendant was sentenced by the Court to serve a term of three (3) years in the custody of the Mississippi Department of Corrections under the terms and conditions of Section 47-7-47 M.C.A. (1972), including

19

the Regimented Inmate Discipline Program (RID) . . . . *Further, if the defendant successfully completes the RID Program, the defendant is to be transported from the RID program to the Lowndes County jail to await re-sentencing.* The Sheriff of said County or his designee is to promptly notify the County Probation Office of the defendant's return and the Probation Office is directed to contact the Court Administrator as soon as possible to schedule the re-sentencing.

If the defendant fails to successfully complete the RID Program, then he shall be transferred to the general population to begin serving his sentence as originally imposed without further order of this Court.

(Emphasis added.)

¶38. I would find that Perry's Lowndes County sentencing order, on its face, failed to establish the statutory requirement that he was sentenced to a term of one year or more. Contrary to the majority's contention, the order made the sentence that Perry serve three years contingent upon his failure to complete the RID program. The sentence "includ[ed]" the RID program and provided that, if Perry completed that program, then he was to be resentenced. Because the sentence included the RID program, Perry's participation in that program was not optional, and Perry either would have completed the program and been resentenced, or he would have failed to complete the program and served what remained of the three years. The sentencing order does not, nor could it, foresee which of these two possibilities would occur. Thus, on the face of the sentencing order, the sentenced imposed was indeterminate. More evidence was required to establish what sentence Perry ultimately received. The State provided no evidence that Perry either did not complete the RID program, or that he completed the RID program and then was resentenced to one year or more.[3] The majority relies on the prosecutor's statement at the sentencing hearing that "I believe even

---

[3] Nor did the State provide any evidence of the duration of the RID program.

20

later, though, he was revoked on that order also, Your Honor." But the prosecutor's unsupported statement of his own belief was not competent evidence to support a finding beyond a reasonable doubt that Perry had failed to complete the RID program. Ultimately, this Court, like the trial court, is unable to know what sentence Perry actually received for the crime.

¶39.    I recognize that the question of whether Perry actually served a sentence of one year or more is irrelevant under Section 99-19-81.[4] To prove habitual offender status under Section 99-19-81, the State was required to prove, beyond a reasonable doubt, that Perry was given a sentence of one year or more. As discussed above, the problem with the State's use of Perry's sentencing order is that, on its face, the order did not impose an absolute sentence of one year or more "in any state and/or federal penal institution." Miss. Code Ann. § 99-19-81.   Perry's sentence was indeterminate. Notably, the sentencing order provided for *resentencing* if Perry completed the RID program, not suspension of the sentence. This Court has held that a sentence of one year or more may be used for habitual offender enhancement under Section 99-19-81, even if the sentence later is suspended. *Jackson v. State*, 381 So. 2d 1040, 1042 (Miss. 1980). But here, because the question of whether Perry received a three-year sentence could be answered only by proof of his completion or noncompletion of the RID program, nothing before the trial court constituted proof beyond a reasonable doubt that Perry had been sentenced to one year or more.

---

[4] That question is relevant under Section 99-19-83, in which the State must prove that the defendant was sentenced to and actually served one year or more. Miss. Code Ann. § 99-19-83 (Rev. 2015); *Bogard v. State*, 624 So. 2d 1313, 1320 (Miss. 1993).

¶40. The Lowndes County sentencing order, standing alone, does not establish that Perry was sentenced to a term of one year or more. Therefore, the State failed to prove Perry's habitual offender status beyond a reasonable doubt. This error is obvious from the face of the sentencing order. I would find that this was a plain, clear, and obvious error that prejudiced Perry and violated his fundamental right of freedom from an illegal sentence. Since the State failed to prove beyond a reasonable doubt that Perry had been sentenced to one year or more, his sentence did not conform to the applicable penalty statute. *See Coleman v. State*, 947 So. 2d 878 (Miss. 2006) (holding that "criminal statutes are to be strictly construed against the State and liberally in favor of the accused"). Accordingly, I would vacate the habitual offender enhancement and remand for resentencing without the enhancement. *See Grayer v. State*, 120 So. 3d 964, 969-70 (Miss. 2013) ("the State is not entitled to a second chance to prove a  defendant's habitual-offender status on remand, because that would violate the prohibition against double jeopardy under the Mississippi Constitution").

**KING, J., JOINS THIS OPINION.**