# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00083-COA

**TONY DASMOND McGEE A/K/A TONY McGEE**        **APPELLANT**
**A/K/A TONY D. McGEE**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2022 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | TONY McGEE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/29/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND ST. PÉ, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    An officer pulled over a man for violating a city noise ordinance and saw what appeared to be marijuana in the car. After a jury trial, he was found guilty of possession of a firearm by a felon.

¶2.    On appeal, he claims that it was error to allow evidence of his prior arrest; that the evidence was insufficient to support the conviction; that he was improperly sentenced as a habitual offender; that the search of his car was illegal; and that he was subjected to an ex post facto violation. Finding no error, we affirm.

**FACTS**

¶3.     In May 2020, Tony McGee was playing "loud music" before being pulled over by Officer Reginald Cain of the Brookhaven Police Department for violating a city noise ordinance.  McGee was driving with his then-girlfriend, Tyranesia Gilmore, who was in the passenger seat.  After approaching McGee's car, the officer observed what he believed was "marijuana in plain view" located "in a cubby hole to the left of the steering wheel."

¶4.     Advising McGee that probable cause existed to search his vehicle, Sergeant Lisa Jackson then instructed both occupants to exit the car, and she proceeded to conduct a probable cause search.  During the search, the sergeant "took custody of the marijuana in the cubby hole" and then "lifted the lid to the [car's] middle console[.]"

¶5.     Next, Sergeant Jackson "observed a black Glock pistol."  Tyranesia claimed that the gun was hers.  After running the serial number through the National Crime Information Center's database, law enforcement discovered that the gun was stolen.  The evidence collected from McGee's car was then taken to the laboratory for testing.

¶6.     McGee was subsequently indicted for possession of less than thirty grams of marijuana with intent to distribute (Count I), possession of a stolen firearm (Count II), and possession of a firearm by a felon (Count III).

**PROCEDURAL HISTORY**

¶7.     Prior to trial, the State and the defense each made pretrial motions.  Through counsel, McGee filed a motion to suppress the evidence collected during the search of his car, arguing that because his arrest was illegal, the subsequent search was also illegal.  Considering the

2

totality of the circumstances and that the presumed contraband was in plain view, the trial court denied McGee's motion to suppress.

¶8. The defense also moved to suppress any mention of McGee's prior arrest for possession of a firearm by a felon and any subsequent proceedings pertaining to that arrest, arguing such evidence violated Mississippi Rule of Evidence 404(b), was unfairly prejudicial, and was irrelevant. Noting the State "likely should be allowed to use [the] evidence to prove motive or intent," which are both permissible uses under the Rule, the trial court deferred ruling on the motion until "the time [the issue] comes up." The trial court reasoned that "the biggest problem with hearing these 404(b) motions in a vacuum" is that "there's no context." However, when the issue "comes up" during trial, the court cautioned that it "may reconsider" its original inclination.

¶9. The State's ore tenus motion focused on precluding the "mention of confusing terms," such as "THC levels and the distinction between marijuana and hemp." Arguing that because "the substance in question was conclusive to be marijuana," any such distinction "is irrelevant under Rule 403" and would only "serve to confuse the jury" or "waste . . . time."

¶10. In response, the defense argued that the test results from the evidence collected revealed that THC "was present in a much lower concentration as compared to cannabidiol," meaning "it would be consistent with concentrations that would be seen in industrial hemp." Ultimately, the defense argued that "whether or not the substance [found] was hemp or marijuana" is a question "for the jury to determine."

¶11. Finding that "it would be reversible error to exclude the defendant from being able

to argue about the concentration of THC in the evidence," the trial court denied the State's motion in limine.

¶12. Specifically addressing Count III of the indictment, McGee made an ore tenus motion arguing his enhanced sentence as a habitual offender constituted an ex post facto violation. McGee was called by counsel to explain his position, and the following exchange occurred:

> The Court: And, Mr. McGee, you've been charged as a habitual offender under 99-19-83; is that correct?
>
> McGee: That's correct.
>
> The Court: And you have previous convictions for manslaughter in 1999?
>
> McGee: 1999.
>
> The Court: And also a plea to -- a plea of guilty on a charge of cocaine possession or cocaine sale. I don't know which one it was.
>
> McGee: Cocaine sale.
>
> . . . .
>
> The Court: Okay. And so that's two felonies that you're being considered for under 99-19-83 [the habitual offender law].
>
> McGee: Correct.

¶13. The trial court then asked McGee to explain his ex post facto argument for the record. Arguing that because manslaughter was "considered a nonviolent offense" when he was convicted in 1999, and that "because the law was changed in 2014 to revise" Mississippi's statute detailing crimes of violence, specifically as it relates to "making [manslaughter] a violent offense," McGee contended that his prior convictions could not be used to support the indictment classifying him as a habitual offender. Relying on caselaw cited by the State,

4

the trial court denied any relief for his ex post facto claim based upon Mississippi Supreme Court precedent.

¶14.    The State then notified the trial court and the defense of its intention to proceed to trial only for the second and third counts—possession of a stolen firearm and possession of a firearm by a felon, respectively—and chose not to proceed to trial on the first count for possession of marijuana with intent to distribute.

*The Trial*

¶15.    At trial, the State called Officer Cain, who largely recounted his observations after he pulled over McGee and Tyranesia.  The officer testified that during his investigation, he determined McGee owned the car he pulled over on the night in question, and McGee also admitted as much.  Officer Cain's body-camera footage was then admitted into evidence and shown to the jury.

¶16.    Next, the jury heard from Lisa Jackson, a sergeant with the Brookhaven Police Department.  Sergeant Jackson testified that after arriving on the scene, Officer Cain "advised me that during the process of a traffic stop he observed marijuana in plain view in a vehicle[.]"  She explained how she "could see" what appeared to be marijuana "with the door closed" while she was standing by McGee's car "in a cubby hole to the left of the steering wheel."  The sergeant testified, "From that point I advised Mr. McGee that we had probable cause to search the vehicle."

¶17.    After disclosing that the search revealed a "black Glock pistol" in the car's center console, Sergeant Jackson made clear that she was wearing her patrol gloves for the entirety

of the search. She further testified that from there, the gun was confiscated and then taken to the lab to "check for any DNA."[1]

¶18. George Schiro, the lab director at Scales Biological Laboratory in Brandon, testified for the State next. The trial court accepted Schiro as "an expert in molecular biology specializing in DNA analysis" with no objection. Schiro explained to the jury the steps he took to retrieve DNA from the gun found in McGee's console. He disclosed that he swabbed the gun's magazine and some cartridges but "did not obtain any DNA" from either sample.

¶19. But Schiro testified that the results from swabs of the gun's grip, slide, and trigger revealed "a mixed DNA profile." Noting there were a few ways this mixed profile could happen, the expert witness explained that the most common instance occurs "where we have DNA from more than one person on that particular item." When asked if he compared the DNA profile found on the gun to any other profiles collected for this particular case, Schiro confirmed that the DNA profile found on the gun was compared to the reference DNA samples from McGee and Tyranesia, in addition to Sergeant Jackson. Schiro concluded that McGee could not "be excluded as a potential contributor to [the] mixed profile. And the probability of excluding a random individual from this mixed profile is 99.7 percent." The results excluded Tyranesia and the sergeant from potential contributors to the mixed profile as well.

¶20. Tyranesia, McGee's then-girlfriend, testified for the State.[2] Disclosing that McGee

---

[1] Sergeant Jackson applied for and received a search warrant for both McGee and his then-girlfriend's DNA.

[2] Prior to testifying, the State agreed to dismiss all charges against Tyranesia.

was the father of her children, she told the jury about their relationship, which had spanned "roughly . . . seven or eight years." Although Tyranesia originally claimed the Glock pistol was hers, when asked during trial if she had ever seen the gun before, she responded, "No, sir." She testified that she only told law enforcement officers the gun was hers because she "was scared" and had "never been in trouble before." But Tyranesia acknowledged that claiming ownership of the gun that night could give McGee protection since he was a felon, and she was not.

¶21. The jury learned that McGee presented Tyranesia with two separate, prewritten affidavits regarding the gun and the hemp. Although she declined to sign the first one, Tyranesia testified that she signed the second affidavit when McGee took her to sign it in front of a notary. But on the stand, she admitted that she did not own the gun, nor had she ever owned the gun.

¶22. On cross-examination, the defense questioned Tyranesia about the affidavit she signed regarding the incident.

| The Defense: | All right. Did [McGee] tell you to lie for him on this affidavit? |
|---|---|
| Tyranesia: | He -- it was already wrote when he approached me. I just signed off on it. |

Despite her earlier testimony disclosing that the statements within the prewritten affidavit were false, the defense nonetheless recited a couple of lines from the affidavit and asked Tyranesia about their truth. Responding that she "[h]onestly . . . never even read it," Tyranesia explained how she "didn't learn what an affidavit was until after the fact" and that

at the time, she "felt . . . under pressure." She further clarified that it was McGee who pressured her to sign the affidavit.

¶23. The State subsequently notified the trial court that it sought to address a Rule 404(b) matter before calling the next witness. The trial court temporarily dismissed the jury to address the matter, and the State proffered the testimony of Troy Floyd. Floyd testified that he was McGee's former probation officer and that in 2010, McGee was pulled over and found with a loaded .40-caliber gun in his car. Floyd recalled that McGee "said [the gun] belonged to his girlfriend" and "he didn't know it was there."

¶24. The defense objected to the State's proffered testimony, arguing the probation officer's testimony was inadmissible under Rule 404(b) because it failed to fall under an exception. The trial court sustained the objection, forbidding Floyd's testimony specifically during "the State's case in chief." However, the trial court noted that because "this is a door that could easily be opened . . . the [c]ourt would likely reconsider its ruling." The State then rested its case-in-chief.

¶25. The defense moved for a directed verdict, arguing that the State failed to put on a prima facie case of possession of a firearm by a felon, specifically as to McGee's constructive possession. Considering the evidence in the light most favorable to the non-moving party and finding the question to be one for the jury, the trial court denied McGee's motion.

¶26. McGee took the stand in his own defense. Multiple times, McGee attempted to use his relationship with Tyranesia—the mother of his children—as a way of evading the

8

questions he was asked. His testimony centered around his contention that the gun found in his car was hers and that he was not aware of its existence until it was found during the traffic stop. He claimed that Gilmore "used [his] vehicle," so when law enforcement saw what appeared to be marijuana in plain view, he "tried to give them . . . a reason why it would be there." McGee explained to the jury that he told Sergeant Jackson:

> It looks like marijuana, but if it is some marijuana, it couldn't be a marijuana substance that -- that is illegal. It's the kind that be bought out the store, which we call CBD, and it's hemp.

McGee further testified, "I never gave anyone permission to search *my* vehicle." But he testified that he was told by law enforcement on the scene that because they saw what appeared to be marijuana "in plain view[,] that gave them probable cause to search *my* vehicle."

¶27. The defense then inquired into McGee's status as a convicted felon:

Defense Counsel: All right. You're a convicted felon; are you not?

McGee: No, I'm not by law. I haven't been convicted in over 22 years. The conviction that the State is using is 22 years old. They're really inadmissible because I haven't been in no trouble or nothing in 22 years. The law changed in 2014. So I don't know how they keep saying that I'm in possession of a firearm by [a] convicted felon. And I filed a motion to try to get my record expunged, and it's on file.

Defense Counsel: But it hasn't been expunged.

McGee: It's still on file.

Then, during the State's cross-examination, McGee was again asked about his status as a felon:

9

| | |
|---|---|
| The State: | Mr. McGee, to start off, you are a convicted felon; is that correct? |
| McGee: | Not correct. |
| The State: | It's not correct. You haven't been convicted of any crimes in the State of Mississippi that are felony level? |
| McGee: | Yeah. That was a twenty-year-old conviction. |

Based on McGee's testimony, the trial court reconsidered its earlier Rule 404(b) ruling as to his prior convictions and bad acts, finding that the door had "undoubtedly been opened" by his responses. Even though the trial court found that McGee "kicked open" the door, it still precluded the State from inquiring into his specific prior convictions and bad acts. Over the defense's continuing objection, the State admitted both sentencing orders detailing his prior convictions into evidence. McGee was then asked once more whether he was a felon, and he responded, "Correct."

¶28. McGee admitted that he had been stopped in 2010 and a weapon was found in the car:

| | |
|---|---|
| The State: | All right. And did you tell [the authorities] on that day that that gun belonged to your girlfriend? |
| McGee: | The thing with that -- |
| The Court: | Answer the question. |
| McGee: | Yes, sir. |
| The State: | That's what you told him then. Now that was a separate girlfriend completely, correct? |
| McGee: | Yeah. See, that's -- that's -- that's the problem. That's the whole problem right there. I deal with multiple females, and |

10

every time I deal with a female, I got to go back over my life and tell them, hey, look, I can't have this around me; I can't have that around me. But in 2010 -- this 12 -- this ten years later. It was another female, another girlfriend that I'm not just aware to say I can't have a firearm around me. And, here it is again. Ten years later I'm placed in the same position, and now you want to bring this up, which it was dismissed. So I really don't know where you're going with it. Like --

¶29. Ultimately, the jury found McGee guilty of possession of a stolen firearm (Count II) and possession of a firearm by a felon (Count III). He was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2020) to life imprisonment without eligibility for parole on each count, with the sentences set to run concurrently. McGee moved for judgment notwithstanding the verdict or a new trial, which the trial court granted in part and denied in part. The trial court granted McGee's motion for judgment notwithstanding the verdict on Count II, possession of a stolen firearm, and denied his motion on Count III, possession of a firearm by a felon. Aggrieved, McGee appeals.

**DISCUSSION**

I. **It was within the trial court's discretion to allow evidence of McGee's prior arrest for possession of a firearm by a felon.**

¶30. On appeal, McGee argues that the trial court erred by "allowing the State to introduce evidence of [his] prior arrest in 2010 for possession of a firearm by a convicted felon." Specifically, he contends that because his "prior arrest did not result in a conviction" or "involve a crime of dishonesty or bear on [his] truthfulness or untruthfulness," the introduction of his prior arrest "did not serve a proper other purpose under Rule 404(b)(2)." Therefore, such evidence "was substantially more prejudicial than probative."

11

¶31. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Abram v. State*, 309 So. 3d 579, 584 (¶12) (Miss. Ct. App. 2020) (quoting *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010)). "[T]his Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision." *Dukes v. State*, 369 So. 3d 553, 558 (¶13) (Miss. 2023) (citing *Bishop v. State*, 982 So. 2d 371, 375 (¶15) (Miss. 2008)).

¶32. "Evidence of prior offenses committed by a defendant, not resulting in conviction, is generally inadmissible either for impeachment purposes or as part of [the] State's case in chief." *Abram*, 309 So. 3d at 584 (¶13) (quoting *Underwood v. State*, 708 So. 2d 18, 32 (¶41) (Miss. 1998)); *see also* MRE 404(b)(1). Yet in criminal cases, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" MRE 404(a)(2)(A).

¶33. Crucially, "Once a defendant takes the stand in order to profess his good character, he or she opens the door, and the prosecution is allowed to respond to the defendant's assertions of good character by impeaching him or her." *Council v. State*, 976 So. 2d 889, 902 (¶31) (Miss. Ct. App. 2007). "When the accused raises the issue of his character, the prosecution may then offer evidence of the accused's bad character." *Abram*, 309 So. 3d at 584 (¶13) (internal quotation marks omitted) (quoting *Council*, 976 So. 2d at 902 (¶31)). "A defendant's character is put in issue when he states that he has a good character or a good record, or when he otherwise offers evidence of good character." *Id.*

¶34. Initially, the trial court precluded the State's use of any evidence concerning McGee's

prior convictions or bad acts during the case-in-chief. But McGee—determined to testify—emphasized that he had "been in no trouble or nothing in 22 years" and that he was not a felon, "not by law." Indeed, by testifying to both statements, McGee put his character in issue and "kicked open" the door, thereby allowing the State to not only offer evidence to rebut his claims under Rule 404(a)(2)(A), but "to respond to [his] assertions of good character by impeaching him." *Council*, 976 So. 2d at 902 (¶31).

¶35. Therefore, we find that the trial court did not abuse its discretion in allowing McGee's prior arrest for possession of a firearm by a felon into evidence.

## II. Sufficient evidence supported McGee's conviction of possession of a firearm by a felon.

¶36. Next, McGee contends that the State failed to prove that he was "in actual possession of the firearm[.]" Specifically, he argues that the "evidence was insufficient to prove beyond a reasonable doubt that [he] was aware of the presence of the firearm in the vehicle or that he intentionally and consciously possessed the firearm constructively by exercising dominion or control over it."

¶37. "This Court reviews de novo a trial court's ruling on the legal sufficiency of the evidence." *Johnson v. State*, 329 So. 3d 1219, 1223 (¶14) (Miss. Ct. App. 2021) (internal quotation marks omitted) (quoting *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018)). "'We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *Sylvester Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "The State is given the benefit of all favorable inferences reasonably drawn from the evidence." *Id.*

13

¶38.    Under Mississippi law, it is "unlawful for any person who has been convicted of a felony . . . to possess any firearm[.]" Miss. Code Ann. § 97-37-5 (Rev. 2014). Accordingly, for the State to establish that a felon was in possession of a firearm, it "must prove two elements beyond a reasonable doubt—(1) the defendant possessed a firearm, and (2) the defendant had previously been convicted of a felony crime." *Kelly v. State*, 305 So. 3d 1134, 1142 (¶27) (Miss. 2020) (internal quotation marks omitted) (quoting *Sylvester Williams*, 285 So. 3d at 159 (¶12)).

¶39.    "Possession can be actual or constructive." *Walker v. State*, 390 So. 3d 504, 509 (¶14) (Miss. 2024). "Constructive possession exists where the contraband was not found in the defendant's actual physical possession but was 'subject to the defendant's dominion or control.'" *Id.* (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)). A rebuttable presumption of constructive possession arises when an individual owns the vehicle in which the contraband is found. *Johnson*, 329 So. 3d at 1224 (¶17) (citing *Lavar Williams v. State*, 334 So. 3d 68, 73 (¶6) (Miss. 2022)). "But the fact that others had access to the premises, by itself, is not necessarily sufficient to rebut the presumption of constructive possession as a matter of law." *Lavar Williams*, 334 So. 3d at 73 (¶6).

¶40.    Not only did McGee testify multiple times that the car he was driving when officers pulled him over was *his* car, but the record reflects that the gun was found in his car's center console. Therefore, while the gun may not have been in McGee's "actual physical possession" at the time of the stop, it was "subject to [his] dominion or control." *Walker*, 390 So. 3d at 509 (¶14). Indeed, the DNA expert concluded that although 99.7 percent of

14

individuals could be excluded as potential contributors to the DNA found on the gun—including Tyranesia and Sergeant Jackson—McGee *could not* "be excluded as a potential contributor." Moreover, McGee acknowledged his status as a felon, and the State entered both sentencing orders from his prior felony convictions into evidence.

¶41. Given these facts, a rational juror could find that McGee constructively possessed a firearm and was previously convicted of a felony crime. Therefore, we find the evidence was sufficient to prove each essential element of felon in possession of a firearm beyond a reasonable doubt.

### III. McGee's failure to challenge the sufficiency of his indictment in the trial court waives the issue on appeal.

¶42. McGee argues that the trial court erred by improperly sentencing him. Specifically, he claims that the State failed to properly indict him as a violent habitual offender because "the indictment failed to allege that [he] actually served one year or more on each of his prior convictions."

¶43. The record reflects McGee failed to challenge the sufficiency of his indictment before the trial court and, instead, raises it for the first time on appeal. "[F]ailure to object in the trial court waive[s] the issue, and [McGee] is barred from raising it for the first time on appeal." *Young v. State*, 368 So. 3d 299, 303-04 (¶9) (Miss. 2023); *see also Perry v. State*, 233 So. 3d 750, 760 (¶25) (Miss. 2017) ("A defendant's failure to object to habitual-offender sentencing operates as a procedural bar to the issue on appeal").

¶44. Procedural bar aside, the State's proposed amendment to McGee's indictment not only alleged his violent habitual offender status, consistent with the meaning of Mississippi Code

Annotated section 99-19-83, but was accompanied by certified copies of his institutional records documenting his time served while in the custody of the Mississippi Department of Corrections. The certified records reflect that McGee served a total of 3,259 days for manslaughter and the sale of cocaine, sentences which ran concurrently. The trial court granted the State's motion to amend over no objection from McGee, written or otherwise. *See* MRCrP 14.4(b) ("Defects respecting the indictment shall be raised by written motion").

¶45. McGee was presented with—at a minimum—two opportunities to challenge the sufficiency of his indictment: when he first received the State's amended indictment and again during his sentencing. He failed to do so both times. Accordingly, this issue is procedurally barred.

### IV.    Pro Se Issues

¶46. Pursuant to our Rules of Appellate Procedure, McGee filed his own pro se supplemental brief. *See* MRAP 28(b). McGee argues that he was subjected to an illegal search in violation of the Fourth Amendment in addition to an ex post facto violation. We address each argument in turn.

### A.    The search of McGee's car was not illegal.

¶47. McGee first argues that the search of his car was illegal. Specifically, he claims that because the officer's initial basis for the traffic stop was not "objectively reasonable" and because the substance in plain view tested for "industrial hemp, a perfectly legal substance to own and possess[,]" everything found during the search of his car—including the gun—"would be fruits of a poisonous tree."

¶48.    "Whether probable cause or reasonable suspicion exists is subject to a de novo review." *Wilson v. State*, 358 So. 3d 1069, 1071-72 (¶10) (Miss. Ct. App. 2022) (internal quotation marks omitted) (quoting *Casey v. State*, 302 So. 3d 617, 623 (¶16) (Miss. 2020)). "However, the trial judge's findings regarding underlying 'historical facts' will not be disturbed unless they are 'clearly erroneous.'" *Smith v. State*, 396 So. 3d 163, 166 (¶10) (Miss. Ct. App. 2024) (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)).

¶49.    The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution protect individuals against unreasonable searches and seizures.  US. Const. amend. IV; Miss. Const. art. 3, § 23.  "Traffic stops are Fourth-Amendment seizures." *Cameron v. State*, 175 So. 3d 574, 577 (¶8) (Miss. Ct. App. 2015) (internal quotations and citations omitted).  Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Johnson v. State*, 228 So. 3d 933, 935-36 (¶6) (Miss. Ct. App. 2017) (internal quotation marks omitted) (quoting *Woods v. State*, 175 So. 3d 579, 581 (¶13) (Miss. Ct. App. 2015)).

¶50.    "Therefore, when a police officer personally observes a driver commit what he reasonably believes is a traffic violation, he then has probable cause to stop the vehicle." *Martin v. State*, 240 So. 3d 1047, 1052 (¶16) (Miss. 2017).  The Mississippi Supreme Court "has held that probable cause may come from any of an officer's five senses." *Id.* at 1054 (¶27) (citing *Dies*, 926 So. 2d at 918 (¶24)).

¶51.    "[N]o warrant is required to seize an object in plain view when viewed by an officer

17

from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence." *Johnson v. State*, 999 So. 2d 360, 364 (¶18) (Miss. 2008) (quoting *McKee v. State*, 878 So. 2d 232, 236 (¶9) (Miss. Ct. App. 2004)).

¶52. At trial, Officer Cain testified that he heard "loud music" coming from McGee's car, in violation of a city noise ordinance, prompting him to make a traffic stop. In line with precedent, the officer "personally observe[d] [McGee] commit what he reasonably believe[d]" was a traffic violation, in turn, giving him probable cause to stop the car. *Martin*, 240 So. 3d at 1052 (¶16). During the traffic stop, Officer Cain "observed" what appeared to be "marijuana in plain view" sitting "in a cubby hole to the left of the steering wheel," thereby supplying the requisite probable cause to perform a valid warrantless search of McGee's car.

¶53. McGee contends that the State's decision in electing "not to prosecute the marijuana possession count," amounts to a "confession that the search was illegal and at odds with the Fourth Amendment." But McGee's argument is misplaced. Because McGee was stopped for playing loud music in violation of a city noise ordinance, the initial stop was reasonable. Likewise, during the stop, officers saw a green leafy substance resembling marijuana in plain view, justifying the search of McGee's car. The fact that the green leafy substance's THC concentration was later found to be "much lower" and, instead, "consistent with concentrations that would be seen in industrial hemp" does nothing to invalidate what was an otherwise legal search.

18

¶54. We find that the officer's initial stop and subsequent search of McGee's car were both reasonable. And the later discovery of the substance's THC concentration is irrelevant to the legality of the search. Therefore, we find that the search of McGee's car was not illegal.

## B. McGee was not subjected to an ex post facto violation.

¶55. McGee also contends that because the State "used [his] prior manslaughter conviction as a crime of violence . . . to enhance [his] non-violent offence [sic] to life without any possibility of parole" he was subjected to an ex post facto violation. Essentially, he argues that because manslaughter was not considered a crime of violence until 2014, and he was convicted in 2001, his sentence under Mississippi Code Annotated section 99-19-83 (Rev. 2020) as a habitual offender should be vacated.

¶56. "This Court has recognized that it is a fundamental right not to be subject[ed] to ex post facto laws." *Moffite v. State*, 309 So. 3d 529, 539 (¶44) (Miss. Ct. App. 2019) (internal quotation marks omitted) (quoting *Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015)). "But we have found no constitutional violation where an enhanced sentence was enforced based on felonies committed before the passing of a habitual-offender statute." *Id.* (citing *Miller v. State*, 225 So. 3d 12, 15 (¶12) (Miss. Ct. App. 2017)).

¶57. Manslaughter is defined as "[t]he ***killing of a human being***, without malice, in the heat of passion, ***but in a cruel or unusual manner, or by the use of a dangerous weapon***, without authority of law, and not in necessary self-defense[.]" Miss. Code Ann. § 97-3-35 (Rev. 2020) (emphasis added). Although the Legislature did not explicitly classify manslaughter as a crime of violence until 2014, by definition, the action requires the killing

of another person in a manner not justified under the law. *See* 2014 Miss. Laws ch. 457, § 78 (H.B. 585) (adding to definition by reference to Mississippi Code Annotated section 97-3-2 (Rev. 2014)). Such an action would unequivocally qualify manslaughter as a crime of violence. *See also Koger v. State*, 919 So. 2d 1058, 1061 (¶22) (Miss. Ct. App. 2005) (finding that manslaughter is considered a crime of violence).

¶58. Moreover, McGee's sentence "is a stiffened penalty for [his] latest crime," not a new or additional penalty for his previous crime. *Miller*, 225 So. 3d at 14 (¶12) (quoting *Smith v. State*, 465 So. 2d 999, 1003 (Miss. 1985)). Therefore, McGee was not subjected to any ex post facto violation.

## CONCLUSION

¶59. We find the trial court did not abuse its discretion in allowing McGee's prior arrest for possession of a firearm by a felon into evidence, as he opened the door during his testimony, allowing the State to rebut it. We also find the evidence was sufficient to prove each essential element of felon in possession of a firearm beyond a reasonable doubt. Further, because McGee never attacked the sufficiency of his indictment in the trial court, he is procedurally barred from doing so now. Lastly, we find the search of his car was not illegal, and he was not subjected to an ex post facto violation. Therefore, McGee's conviction and sentence are affirmed.

¶60. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

20