RUSSELL, J„
for the Court:
¶ 1. Rebecca Anderson Latham (Rebecca) contends that the circuit court erred by: (1) denying her motion for a judgment notwithstanding the verdict because the evidence presented at trial by the State was not legally sufficient to support a conviction of domestic violence; (2) not finding that she acted solely in self-defense; (8) not finding that her actions were done out of necessity; and (4) not granting her a directed verdict based on the Weathersby rule. Finding no error, we affirm.
STATEMENT OF FACTS
¶2. On May 26, 2010, the Municipal Court of Brandon, Mississippi, entered a judgment against Rebecca, finding her guilty of domestic violence in violation of Mississippi Code Annotated section 97-3-7 (Supp.2011). The charge arose from a domestic dispute that occurred on March 9, 2010, between Rebecca and her husband, Christopher Latham (Chris).
¶ 3. On June 25, 2010, Rebecca appealed the judgment, requesting a trial de novo. On October 14, 2010, the County Court of Rankin County, sitting without a jury,[1] heard the de novo appeal of Rebecca from the Brandon Municipal Court. At the conclusion of trial, the county court entered a judgment against Rebecca.
¶ 4. On October 20, 2010, Rebecca filed a post-trial motion for a JNOV or, in the alternative, a new trial. On October 21, 2010, the county court found the filing to be frivolous and without merit. Thus, the county court denied the motion.
¶ 5. On November 22, 2010, Rebecca appealed the judgment of conviction and sentence and the order denying her post-trial motion, to the Circuit Court of Rankin County. On April 26, 2011, the circuit court entered an order affirming the conviction and held that the findings of the trial judge were supported by the evidence presented at trial and were not clearly erroneous or manifestly wrong. Further, the circuit court found that when considering the facts in a light most favorable to the State, a reasonable fact-finder could *307 have found Rebecca guilty beyond a reasonable doubt.
¶ 6. On May 6, 2011, Rebecca timely appealed the opinion and order of the circuit court.
DISCUSSION
¶ 7. “When reviewing challenges to the legal sufficiency of the evidence, the evidence and the inferences taken from the evidence must be viewed in the light most favorable to the prosecution.” Mills v. City of Water Valley, 66 So.3d 193, 195 (¶ 9) (Miss.2011) (citing Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). This Court does not have to believe “that the evidence at trial established guilt beyond a reasonable doubt”; instead, we must determine if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 195-96 (¶ 9) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
I. Sufficiency of Evidence to Support Domestic Violence Conviction
¶ 8. Rebecca contends that the circuit court erred in denying her motion for JNOV because the evidence presented at trial by the State was not legally sufficient to support a conviction of domestic violence. The critical inquiry when considering whether there is sufficient evidence to sustain Rebecca’s conviction is “whether the evidence shows ‘beyond a reasonable doubt that [Rebecca] committed the act charged, and that [she] did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Bush, 895 So.2d at 843 (¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)).
¶ 9. “When the [State’s] case rests on circumstantial evidence, the evidence must be sufficient to prove guilt beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence.” Mills, 66 So.3d at 196 (¶ 10) (quoting Goff v. State, 14 So.3d 625, 647 (¶ 75) (Miss.2009)). The evidence presented at trial points toward a conclusion beyond a reasonable doubt that Rebecca is guilty of domestic violence. Furthermore, no alternative hypothesis exists as to how Chris received the bite marks.
¶ 10. During trial, the State presented evidence through witness testimony and photographs. The State’s first witness was Kimberly Preston (Preston), the 911 dispatcher who answered the initial call placed by Chris. Preston testified that on the morning of March 9, 2010, at approximately 2:30, she received a phone call at the Rankin County Sheriffs Department Dispatch Center. The male subject identified himself as Chris and told her in a controlled, yet nervous and scary voice that he was having a physical disturbance with his wife. At some point, the call was disconnected, and Preston immediately called back. Chris informed Preston that Rebecca had hung up the phone, that she had just broken his glasses, that she was biting him, and that he was holding her down. Preston further testified that Chris was constantly trying to get the kids to go into another room and that the kids were screaming and yelling in the background. Preston heard Chris tell one of the children that Rebecca was fine and that he was holding her down so that she would not hurt anybody.
¶ 11. In addition to the 911 dispatcher, the State presented the testimony of the first-responding police officer, Sergeant Michael Brown (Sergeant Brown). Sergeant Brown stated that when he first walked into the house, he saw two crying and upset children on his right. On his left, he saw Chris on top of Rebecca, hold *308 ing her wrists together and hunched over to keep her from moving. He then noticed gash marks like teeth marks on Chris’s arms and legs and chunks bitten out of his arms and legs. Sergeant Brown grabbed Rebecca’s arm and placed handcuffs on her. He testified that he could tell Rebecca was intoxicated because he had seen her that way before, and she kept rambling about a yard sale.
¶ 12. Chris told Sergeant Brown that Rebecca had gone to Walmart and returned home intoxicated. Chris reported that Rebecca wanted to leave the house again. He restrained her, and they began to argue. Chris then told Sergeant Brown that Rebecca picked up a glass china bowl and broke it.
¶ 13. Sergeant Brown testified that the only part of Rebecca’s rambling he could understand was that she was trying to get ready for a yard sale. Sergeant Brown further testified that he signed an affidavit charging Rebecca with domestic violence because of the statements received from both of them and also the physical marks on Chris at the time, which consisted of several bite marks. The photographs taken by Sergeant Brown of the bite marks were introduced into evidence at trial.
¶ 14. Chris testified that he did not recall much about what happened on the night of March 9. He stated that he only remembered Rebecca had been drinking, that he tried to restrain her because he was concerned about her leaving the house intoxicated, and that he called 911 because he did not want the kids to see the argument.
¶ 15. Rebecca testified on her own behalf. She admitted that she was an alcoholic and was intoxicated when she made it home that night. She stated that she went to Walmart to get some items for a yard sale she was having the next day. On her way home, she stopped and got a half-pint bottle of vodka and drank it. Rebecca stated that after arriving home, she remembered she needed price stickers for the sale and wanted to go back out to pick them up, but Chris would not allow her to leave. He blocked the door, picked her up, and shoved her from the garage door into their bedroom. At some point, Rebecca was able to get around Chris, and she went into the kitchen, where she broke a glass bowl. Chris then pushed her back and told her that he would call 911. She asked him not to call. While he was on the phone with the 911 dispatcher, Rebecca grabbed the phone, disconnected the call, and broke his glasses. When questioned about the bite marks on Chris, Rebecca testified that because her hands were pinned, the only way to get him off of her was to bite him.
¶ 16. On cross-examination, Rebecca testified that Chris knows she is an alcoholic and suffers from post-traumatic stress disorder, and that he only called 911 in retaliation for her drinking habit. When asked how she could grab and hang up the phone while Chris talked to the 911 dispatcher and be pinned down at the same time, Rebecca stated that there were different times when she was actually restrained. She stated that Chris likes to start conflicts, get her in trouble, and then be the rescuer. Rebecca said that she did not charge him with domestic violence because of the kids. She further stated that Chris was not cooperating in court because they are working on their marriage.
¶ 17. Rebecca argues that the facts in this case are similar to those in Mills, 66 So.3d 193. We find the opposite to be true. In Mills, the issue before the Court was whether there was an alternate hypothesis as to how the injuries were received by the victim. Id. at 195 (¶ 5). The Court reasoned that there was not enough evidence presented by the City to prove *309 guilt beyond a reasonable doubt because the only persons who testified were officers who arrived after the altercation occurred. Id. at 196 (¶ 10). The Court explained that the officers could not say who attacked who first or who caused the injuries. Id. Furthermore, the Court found that because the victim did not testify as to how he received his injuries at trial they could not find that sufficient evidence was presented to sustain a conviction. Id.
¶ 18. Mississippi Code Annotated section 99 — 3—7(3)(a) (Supp.2011) sets forth Mississippi’s principal-aggressor law applicable to domestic-violence cases. A victim’s cooperation is not required to proceed with a charge of domestic violence. See Id. The statute mandates that “any law enforcement officer shall arrest a person ... when he has probable cause to believe that the person has ... knowingly committed” an act of domestic violence within the past twenty-four hours. Id. Therefore, Chris’s decision to not cooperate does not preclude a charge of domestic violence against Rebecca.
¶ 19. In addition, the evidence presented in the present case is different. The record reflects sufficient evidence to support Rebecca’s conviction. The State presented evidence from the 911 dispatcher, who stated that Chris told her that Rebecca bit him. Pictures of Chris’s injuries were admitted into evidence, and Rebecca admitted that she bit Chris. While she later stated on cross examination that she bit him only because her hands were pinned down, contradictory evidence was presented that she was able to grab and disconnect the phone during the 911 call.
¶ 20. Unlike Mills, the State met its burden in the instant case. There is no reasonable hypotheses consistent with innocence. At the conclusion of the evidence, the county court found:
[T]he picture painted from what was going on during the 911 call and what Sergeant Brown saw when he got there, makes it pretty clear that the stories they heard at the time are the real story here. And while I’m certainly willing to take into account Ms. Latham’s various post-traumatic stress disorder and other issues, I’m not willing to find her to be such a victim that she had a right to do what she did in this case. Mr. Latham did exactly what he should have done; that is, keeping her from leaving that house again when she had just knocked off a whole container of vodka, and I think he was perfectly justified in trying to prevent her from leaving the house. I have some doubts about who did what first but I don’t believe he would have called 911 unless he thought there was a serious issue here. I can’t ignore the fact there were two children right there for whom she had absolutely no regard apparently, and the fact that she broke his glasses[,] and I’ve looked at the pictures there where she bit him.
She hung up the phone while he was talking to 911. How exactly did she do that if he had her pinned down with her arms behind her? And her story had just been the only reason I bit him is because I couldn’t get my hands free. Well, she got them free long enough to somehow disconnect the phone.
The bottom line is, Ms. Latham, there may be some truth — and I’m sure there is some truth to your story, but it doesn’t raise any serious doubt in the mind of the court as to what happened that precipitated that call and the arrival of the police out there. And in a domestic violence situation, the fact that the other person may have actually initiated the sequence of events doesn’t excuse you from what you did[.][W]hat you did was simple assault, and it was domestic in nature.
*310 ¶ 21. Based on the evidence presented at trial, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Mississippi Code Annotated section 97-3-7(1) provides the elements that must be proven for a conviction of domestic violence. The State in this case was required to prove that Rebecca committed simple assault by “purposely, knowingly or recklessly causing] bodily injury” to Chris by biting him. Id. A conviction requires proof that a person is a current or former spouse of the alleged victim. Miss.Code Ann. § 97-3-7(3).
¶ 22. No one disputes that on March 9, 2010, Chris and Rebecca had a marital relationship. Thus the State is left to prove that Rebecca purposely, knowingly, or recklessly caused Chris’s injury. After carefully considering the evidence presented, we find that the evidence presented by the State was legally sufficient to convict Rebecca of domestic violence. We further find that a reasonable juror could find that Rebecca committed domestic violence beyond a reasonable doubt.
II. Self-Defense
¶ 23. “To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent danger of such design being accomplished.” Anderson v. State, 571 So.2d 961, 963 (Miss.1990). There was no evidence presented by Rebecca to suggest that she feared Chris would hurt her or cause her some great bodily harm. Her behavior was not necessary for self-preservation. Instead, her actions were made to escape Chris’s restraint and leave the home. While she testified that Chris’s restraint of her reminded her of her ex-husband’s abuse, there was no evidence presented that supported her claim that she felt there was an imminent threat of her life or great bodily harm. In fact, on the contrary, the evidence presented supports a conclusion that Rebecca presented a threat of danger and great bodily harm to herself and others.
¶ 24. Based on the evidence before us, this Court finds the evidence was sufficient to establish that Rebecca did not act in self-defense. The State put forth sufficient evidence to create a factual question that reasonable and fair-minded jurors could have formed differing conclusions about whether Rebecca was acting in self-defense. This issue is without merit.
III. Defense of Necessity
¶ 25. “The defense of necessity is ‘available where the defendant reasonably acts out of fear of ‘imminent danger of death or serious bodily harm’ to others.’ ” Davis v. State, 18 So.3d 842, 849 (¶ 19) (Miss.2009). Under the defense of necessity, “[w]here a person reasonably believes that he is in danger of physical harm, he may be excused for some conduct which ordinarily would be criminal.” Id. at (¶20). In order for necessity to be shown, Rebecca would have to prove that: “(1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided.” Id. at (¶ 19). Rebecca testified that she bit Chris because she wanted to leave their home and could not because he had her hands pinned down. She did not bite him to avoid harm. Instead, she bit him to free herself to leave the home. There was no evidence or testimony presented to suggest that Rebecca felt she was in imminent *311 danger of death or serious bodily harm to others. This issue is without merit.
IV. Weathersby Rule
¶ 26. Rebecca contends that she and her husband were the only eyewitnesses to the incident that occurred and that there were no substantial contradictions between their testimony and the testimony of the State’s witnesses. Thus, she argues that the Weathersby rule applies and that she is entitled to a directed verdict.
¶ 27. “[W]here the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State, or by the physical facts or by the facts of common knowledge.” Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933). “Where the physical facts and circumstances in evidence materially contradict the defendant’s version of what happened, the [c]ircuit [c]ourt is not required to direct a verdict under Weathersby. Rather, the matter then becomes a question for the jury.” Buchanan v. State, 567 So.2d 194, 197 (Miss.1990). Further, “this rule has no application where the defendant’s version is patently unreasonable^]” Johnson v. State, 987 So.2d 420, 425 (¶ 11) (Miss.2008) (quoting Blanks v. State, 547 So.2d 29, 33 (Miss.1989)).
¶ 28. In the case at bar, Rebecca’s version of what happened does not substantially contradict the explanations of the witnesses for the State. If the trial court had applied Weathersby, Rebecca’s version, if accepted as true, is sufficient to support the conviction. While Rebecca testified that she was shoved, pushed, blocked, and pinned down by Chris, she also testified that she hung up the phone on the 911 dispatcher, bit Chris in an effort to free herself, and broke his glasses. Rebecca stated that she only bit Chris because her hands were pinned down. Yet, as noted by the circuit court, she was able to grab and disconnect the phone. She admitted that she was intoxicated and trying to leave the house. The 911 dispatcher testified that Chris told her he was holding Rebecca down so that she would not hurt anybody. According to the testimony of Sergeant Brown, Rebecca did not mention that Chris harmed her at all. Rebecca suggests that she should be exonerated because she did not charge Chris with domestic violence and because he has refused to cooperate.
¶ 29. The Weathersby rule is inapplicable because Rebecca admitted to all the elements necessary to prove domestic violence. The evidence presented a guilt issue for the fact-finder to determine, and the verdict is supported by the evidence. Rebecca is not entitled to a directed verdict. This issue is without merit.
¶ 30. For the foregoing reasons, we affirm the judgment of the circuit court.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR.
MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. "The Constitution of the United States guarantees a jury trial to all persons charged with a 'serious offense.’ ” Frazier v. State, 817 So.2d 663, 664 (¶ 3) (Miss.Ct.App.2002). "A serious offense is one for which the defendant could be sentenced to more than six months in jail for committing.” Id.