## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2018-KA-00011-COA

**JAMES DEVON BROWN A/K/A JAMES D. BROWN A/K/A JAMES BROWN**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/01/2017 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | ANGEL DANIELLE PATANO-MYERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/11/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     On August 30, 2017, James Devon Brown was convicted of aggravated domestic violence with habitual offender status. He was sentenced to life in prison without eligibility for parole. Brown now appeals the trial court's judgment, asserting the following assignments of error: (1) the trial court erred by refusing his lesser-included offense jury instruction; (2) the indictment was insufficient; (3) he was denied his right to a speedy trial; and (4) the sentence imposed by the trial court was improper.

¶2.     For the following reasons, the judgment is affirmed.

# FACTS

¶3.     James Devon Brown lived with his girlfriend, Lamonica Bodie, at her home in Gautier, Mississippi.  He was unemployed.  On the morning of February 3, 2016, Lamonica left the home to give a friend a ride to the bus station.  Lamonica did not tell Brown what she was going to do.  That same morning Brown left the home in search of a job.  While driving, Brown saw Lamonica in her car with another man.  Brown began to make repeated phone calls to Lamonica.  Through a serious of short phone calls—initiated by Brown and ending with Lamonica hanging up—they arranged to meet back at Lamonica's house.

¶4.     Once there Lamonica and Brown discussed their relationship.  While folding laundry in the bedroom, Lamonica told Brown she wanted to end the relationship.  She then asked him to move out.  Brown asked Lamonica if he could sleep on the couch until he got his tax return money.  Lamonica said no.

¶5.     Brown suddenly took off his shirt and said, "I don't have anything to lose."  Lamonica, feeling uncomfortable, tried to reach for her keys and cellphone.  Brown grabbed her from behind and slid his forearm around her neck.  As Lamonica tried to pull away, his grip tightened. Brown's arm constricted, and he "was choking [Lamonica] more." Lamonica said at first she could breathe "a little bit."  However, "all of a sudden it got tighter and tighter and [she] couldn't breathe."  Lamonica testified that as Brown's grip got tighter she "just knew [she] was going to die."  The pair then collapsed in a heap on the floor.

¶6.     During the struggle Lamonica's phone rang, but she could not answer it.  Lamonica convinced Brown to let her text the caller to see what the person wanted.  Instead, Lamonica

2

texted her mother and told her to call 911. Unfortunately, Lamonica's mother never received the message. Lamonica was unsure whether or not she lost consciousness during the attack. Eventually, Lamonica was able to comfort Brown by rubbing his head, ending the struggle. Brown then told her to "tell them somebody else did this" to her. He then left he house, and Lamonica went inside the bathroom and called 911. The dispatcher testified that during the call Lamonica's voice was "really strained."

¶7.     Officer Daniel Mathis responded to the call. When he arrived Lamonica was crying and upset. She complained that her head hurt and her throat was sore. Officer Mathis called for an ambulance. Lamonica told the officer that Brown had choked her in the bedroom during a physical altercation. Officer Mathis noticed and photographed extensive bruising on both sides of Lamonica's neck and burst blood vessels in both eyes. The bruising and burst vessels worsened over the following days.

¶8.     Lamonica provided Officer Mathis with a description of Brown's car. Several minutes later, officers pulled Brown over and arrested him. Lamonica was transported via ambulance to Singing River Hospital, where she was examined by Dr. Steven Boskovick. Dr. Boskovick testified that Lamonica's injuries were consistent with someone who had been strangled.

¶9.     Lamonica later signed an affidavit stating that the incident was a misunderstanding, and that she no longer wished to go along with or be a part of any prosecution. She said that this affidavit was "before [she] understood what the consequences [were] going to be."

¶10.    During trial, Brown testified in his own defense. He swore he never put a hand on

3

Lamonica. He stated that he did not strangle her and that they had never been in a physical altercation. His theory was that perhaps a man named Marcus did it. Brown requested that the jury be given a lesser-included offense instruction on simple domestic violence. The trial court denied Brown's request.

## DISCUSSION

### I. The lesser-included offense instruction was not warranted.

¶11. During trial, Brown requested a lesser-included offense instruction on simple domestic violence. Whether a defendant is entitled to a lesser-included offense instruction is a question of law. *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007). This Court reviews questions of law de novo. *Id*.

¶12. A defendant has an "absolute right" to a jury instruction for a lesser-included offense if the evidence supports such an instruction. *Id*. at 1260 (¶22). Failure to give such an instruction when warranted is reversible error. *Id*. Evidence supports an instruction of a lesser-included offense if, when viewed in the light most favorable to the party requesting the instruction, a reasonable juror could not exclude the lesser-included offense beyond a reasonable doubt. *Taylor v. State*, 577 So. 2d 381, 383 (¶6) (Miss. 1991). Alternatively, if the evidence can only support the principal charge, then the lesser-included offense should be refused. *Id*. at (¶11).

¶13. The question is then whether Brown was entitled to the lesser-included instruction. Under the plain language of the law, he is not. A person is guilty of aggravated domestic violence when they strangle, or attempt to strangle, a person they are in a current or former

4

dating relationship with. Miss. Code Ann. § 97-3-7(4)(a)(iii) (Rev. 2014). "Strangle" is defined in the Code as "restrict[ing] the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of another person by any means or to intentionally block the nose or mouth of another person by any means." Miss. Code Ann. § 97-3-7(9)(a) (Rev. 2014).

¶14. Brown's proposed jury instruction provided that if the jury found Brown "attempted to cause or purposely, knowingly or recklessly caused bodily injury to Lamonica Bodie, or . . . attempted physical menace to put Lamonica Bodie in fear of imminent serious bodily harm" then it should find him guilty of Simple Domestic Violence.[1]

¶15. Our Supreme Court has held that "where an altercation begins with a simple assault but, as a matter of law, escalates in a continuous sequence of events to an aggravated assault, the simple assault is subsumed into the aggravated assault." *Downs*, 962 So. 2d at 1262 (¶29). Further, our Supreme Court has also "upheld the refusal of a trial court to give a lesser-included offense instruction on simple assault when the evidence clearly supported the crime of aggravated assault." *Id*. at (¶30).

¶16. If a reasonable juror could, viewing all of the evidence in a light most favorable to Brown, find him guilty of simple domestic violence beyond a reasonable doubt, the instruction should have been included. In weighing whether to grant the lesser-included instruction, the trial court stated:

---

[1] Mississippi Code Annotated § 97-3-7(3)(ii), the subsection for Simple Domestic Violence, also provides that if the defendant "negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." This was not included on Brown's proposed lesser-included offense instruction.

5

> I have tried to look at the evidence in the light most favorable to the defendant, how a jury could possibly find him guilty of the lesser-included offense. The testimony is clearly that, from the victim, that he choked her, if not to unconsciousness, almost to unconsciousness. The defendant's testimony is that he never touched her.

¶17. Strangulation automatically falls under aggravated domestic violence. In this case there was evidence Lamonica was strangled, meaning section 97-3-7-(4)(a)(iii) was appropriate. There was no evidence of simple domestic violence. Brown only offered evidence that he did not do anything.

¶18. Brown initiated the altercation by grabbing Lamonica from behind and putting his arm around her neck. Lamonica testified that this limited her breathing. Brown continued to tighten his grip to the point where Lamonica could not breathe. Brown's actions fall within the statute's definition of "strangle."

¶19. Because a reasonable jury could not have found Brown guilty of simple domestic violence, the trial court's rejection of a lesser-included instruction was proper.

## II. The indictment was properly amended.

¶20. On the day trial was set, Brown rejected the State's plea offer. The State then requested another continuance and moved to amend the indictment against Brown to change his status to a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2015). Brown filed a pro se motion objecting to the habitual offender amendment. The motion to amend was granted.

### A. Sufficiency of Indictment

¶21. Brown argues that the State's amended indictment charging him as a habitual offender

6

was "fatally defective" under Rule 14.1 of the Mississippi Rules of Criminal Procedure. Whether an indictment is so flawed as to require reversal is a question of law. *Brown v. State*, 934 So. 2d 1039, 1043 (¶16) (Miss. Ct. App. 2006). Rule 14.1 states that prior convictions used for enhanced punishment must be identified in the indictment including:

> the name of the crime, the name of the court in which each such conviction occurred, and the cause number(s), the date(s) of conviction, and, *if relevant, the length of time the accused was incarcerated for each such conviction.*

MRCrP 14.1(b) (emphasis added). Brown argues that the State's failure to specify the length of time he was actually incarcerated for his previous offenses invalidates the indictment.

¶22. Yet, the new criminal rules were not in effect at the time of Brown's amended indictment. The indictment was amended in February 2017, four months before the Rules went into effect. Instead, the applicable rule is Rule 11.03 of the Uniform Rules of Circuit and County Court Practice which states:

> In cases involving enhanced punishment for subsequent offenses under state statute:
>
> The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.

¶23. At the time of the amendment, the State was not required to include the length of incarceration. Because the amended indictment was sufficient and satisfied all of the required elements at the time, Brown's argument is without merit.

### B.     Amendment of Indictment

¶24. Brown continues his challenge to the indictment by arguing that the State

7

inappropriately amended it to include a habitual-offender enhancement, and on the day scheduled for trial. The standard of review to an amendment to an indictment is de novo. *Spears v. State*, 942 So. 2d 772, 776 (¶5) (Miss. 2006). Brown alleges that not only was he prejudiced by the amendment, but also that the State requested a continuance for the sole purpose of circumventing Rule 14.1's thirty-day requirement.[2]

¶25. The State informed the trial court that they intended to amend the indictment on the same day the State requested a continuance. However, Brown again cites the Mississippi Rules of Criminal Procedure, which were not yet in effect. The rule in place at the time stated:

> All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement . . . . Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

URCCC 7.09. "The rule does not speak to the timing of the amendment, only that the defendant must be 'afforded a fair opportunity to present a defense' and 'not [be] unfairly surprised.'" *Gowdy v. State*, 56 So. 3d 540, 545 (¶16) (Miss. 2011); URCCC 7.09. Because Rule 14.1 was not in effect at the time, we find this claim without merit.

¶26. There was also no prejudice to Brown. "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be

---

[2] Mississippi Rule of Criminal Procedure 14.1(b)(2) states that the State shall "after indictment, and at least thirty (30) days before trial or entry of a plea of guilty, file with the court formal notice of such prior conviction(s)."

equally available after the amendment is made." *Shumaker v. State*, 956 So. 2d 1078, 1087 (¶25) (Miss. Ct. App. 2007).

¶27. The prior felony convictions were used to increase the sentence Brown faced, and did not affect the core of the charge of aggravated domestic violence. This did not impact Brown's ability to prepare a defense, especially because trial was continued.

¶28. The core prejudice Brown alleges is that if he knew he would be charged as a habitual offender, he could have altered his plea negotiations. However, Brown admits that he continued to reject the State's plea offer even after the amendment. As a result, there is no error.

### III. Pro Se Issues

#### A. The sentence was not unfairly imposed.

¶29. Brown also filed a pro se supplemental brief in addition to his appellant's brief. He alleges that his sentence to life without parole pursuant to section 99-19-83 was unconstitutional. Specifically, he claims the sentence was imposed upon him as punishment for rejecting the State's plea deal and seeking his Sixth Amendment right to a jury trial.

¶30. A trial court cannot impose a heavier sentence to punish a defendant for electing to go to trial. *Gillum v. State*, 468 So. 2d 856, 854 (Miss. 1985). As a habitual offender, once the jury found him guilty, the trial court was required to levy the sentence. "[H]owever, where the record reveals without a doubt that the sentence imposed was based solely upon defendant's prior convictions . . . [the] trial court's sentencing discretion will not be disturbed." *Id*. Brown's previous convictions made him applicable for habitual-offender

status under the statute, and the trial court properly sentenced him as such. We find no evidence in the record that Brown was in any way "punished for rejecting a plea deal." Therefore, we find this argument is without merit.

## B. Brown's right to a speedy trial was not violated.

¶31. Brown was indicted for aggravated domestic violence on July 7, 2016. On August 7, 2016 a "Waiver Arraignment/Plea/Trial Setting/Schedule Order" was entered. On the same day Brown filed his "Motion for Discovery/Speedy Trial Demand." The first trial setting was for November 9, 2016. On that day the defense requested and was granted a continuance so they could meet with the victim. By the next trial setting on February 7, 2017, the defense had not yet met with the victim. The State requested a continuance to provide them the opportunity to do so. At the next trial setting, Brown rejected the State's plea offer. On that same day the State requested another continuance.

¶32. Brown's counsel filed a "Motion for Mental Evaluation" on May 1, 2017. An order granting the motion was entered on May 5, 2017. An identical order granting the motion was also entered on July 17, 2017. A mental evaluation was conducted on August 3, 2017. In between the "Order for Mental Evaluation and Treatment" and the evaluation itself, the State made two requests for continuances. One request was made on May 9, 2017, and the other on June 2, 2017. Both of these continuances were requested to allow time for Brown's mental evaluation. Also while awaiting the mental evaluation, Brown filed a pro se "Motion to Dismiss for Failure to Provide a Fast and Speedy Trial" on June 27, 2017.

¶33. On the day before trial, which was scheduled for August 29, 2017, Brown's counsel

10

withdrew his pro se "Motion to Dismiss for Failure to Provide a Fast and Speedy Trial."

Trial commenced on August 29, 2017.

| | |
|---|---|
| February 3, 2016 | Arrest |
| July 7, 2016 | Indictment for aggravated domestic violence |
| September 7, 2016 | "Waiver Arraignment/ Plea/ Trial Setting/ Schedule Order" entered; Brown filed "Motion for Discovery/ Speedy Trial Demand" |
| November 9, 2016 | Trial scheduled; Defense requested and was granted a continuance to meet with the victim |
| January 9, 2017 | Brown's pro se letter to the circuit clerk requesting a speedy trial received |
| February 7, 2017 | Trial scheduled; State requested continuance so defense could meet with the victim |
| February 15, 2017 | Brown rejected the State's plea offer; State requested a continuance and filed "Motion to Amend as Habitual Offender Pursuant to MS Code Annotated § 99-19-83" |
| March 30, 2017 | Brown's pro se "Motion to Object to the Amending as Habitual Offender Pursuant to Mississippi Code Annotated § 99-19-83" filed |
| May 1, 2017 | Brown's "Motion for Mental Evaluation" filed |
| May 5, 2017 | "Order for Mental Evaluation and Treatment" entered |
| May 9, 2017 | State requested continuance pending results of Brown's mental evaluation |
| June 2, 2017 | State requested another continuance for Brown's mental evaluation |
| June 27, 2017 | Brown's pro se "Motion to Dismiss Charges for Failure to Provide a Fast and Speedy Trial" entered |

11

| | |
|---|---|
| July 17, 2017 | "Order for Mental Evaluation and Treatment" entered |
| August 28, 2017 | Brown's counsel withdrew "Motion to Dismiss Charges for Failure to Provide a Fast and Speedy Trial"; "Order Amending Indictment to Charge Defendant as Habitual Offender Pursuant to Mississippi Code Annotated § 99-19-83" entered |
| August 29, 2017 | Trial |

### 1. Brown's statutory right to a speedy trial was not violated.

¶34.    "While the right to a speedy trial is protected both constitutionally and statutorily, any inquiry into a violation of the right to a speedy trial must necessarily begin with an analysis of a state statutory right, as the State has the right to craft laws so long as they are not in violation of the minimum standards set by the federal constitution." *Shumaker*, 956 So. 2d at 1082 (¶3).  Mississippi safeguards the right to a speedy trial by providing that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."  Miss. Code Ann. § 99-17-1 (Rev. 2014).

¶35.    Brown waived his arraignment on September 7, 2016.  When a defendant has waived arraignment, "that date is considered day one on the speedy trial calendar for purposes of defendant's statutory speedy trial claim." *Walker v. State*, 196 So. 3d 978, 982 (¶17) (Miss. Ct. App. 2015).  Brown filed his "Motion for Discovery/Speedy Trial Demand" that same day.  At the first trial setting, on November 9, 2016, Brown requested a continuance, which tolled the speedy-trial clock.  At the next trial setting on February 7, 2017, the State requested a continuance to provide Brown the opportunity to meet with the victim.  Because this

12

continuance was for Brown's benefit and he did not object, the clock was again tolled. At the next trial setting on February 15, 2017, the State requested another continuance. No explanation was given for the request. Therefore, this continuance weighs against the State.

¶36. The defense filed a motion for a mental evaluation on May 1, 2017. The trial court granted the motion. The evaluation was conducted on August 3, 2017. The time between the motion and the evaluation weigh against Brown. *Poole v. State*, 826 So. 2d 1222, 1228 (¶16) (Miss. 2002) ("Motions made and granted on behalf of the defense are charged against them."). Brown then went to trial on August 29, 2017.

¶37. One hundred twenty-four days elapsed between Brown's indictment and the first trial setting. An additional seventy-five days ticked by between the State's unexplained continuance request and Brown's request for a mental evaluation. Twenty-seven more days went by between Brown's competency evaluation and his trial on August 29, 2017. All together the delays attributable to the State total 226 days. This time period is within the 270 days the State is statutorily mandated to bring a defendant to trial. Therefore, Brown's statutory right to a speedy trial was not violated.

### 2. Brown's constitutional right to a speedy trial was not violated.

¶38. Defendants are also guaranteed the right to a speedy trial by the United States and Mississippi Constitutions. U.S. Const. Amend. VI; Miss. Const. art. 3, § 26.

¶39. A balancing test is used to determine whether a defendant's right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). This test involves assigning a weight to, and balancing, the following factors: (a) length of delay; (b) reason for delay; (c)

13

defendant's assertion of his or her right to a speedy trial; and (d) prejudice to the defendant. *Id*. These factors are viewed in totality and no single factor alone is dispositive. *Simmons v. State*, 678 So. 2d 683, 686 (¶13) (Miss. 1996).

### a.    Length of Delay

¶40.    The length of delay serves a bifurcated purpose as it not only establishes prejudice, but it is also used as a "triggering mechanism" to establish if a speedy trial analysis is proper. *Brengettcy v. State*, 794 So. 2d 987, 992 (¶11) (Miss. 2001) (explaining that "where the delay is not presumptively prejudicial, there is no need to review the remaining *Barker* factors").

¶41.    An eight-month delay is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406, 408 (¶15) (Miss. 1989). In calculating the length of delay for a constitutional speedy trial claim, the clock begins to run once a person has been accused. *Id*. at (¶12). This can be when there is a formal indictment or information, or when a person has been arrested. *Id*.

¶42.    Brown was arrested on February 3, 2016. His trial commenced August 29, 2017. This delay of 573 days is presumptively prejudicial; a fact conceded to by the State. The delay sufficiently triggers an analysis of the remaining *Barker* factors.

### b.    Reason for Delay

¶43.    A defendant has no duty to bring himself to court, as this is the duty of the State. *Simmons*, 678 So. 2d at 687 (¶18). Instead, the burden to prove a justifiable reason for the delay also falls on the State. *Smith*, 550 So. 2d at 408 (¶17).

¶44.    Different degrees of weight are assigned to the differing reasons for delay. *Perry v. State*, 233 So. 3d 750, 756 (¶11) (Miss. 2017). If the State acted strategically, with bad faith,

14

or has declined to show good cause for the delay, this factor is weighed in favor of the defendant. *Id*. at 758 (¶15). On the other hand, delays attributable to the defendant are counted against him and the speedy-trial clock is tolled. *Id*. Lastly, while negligence or overcrowded courts are not acceptable, they are also not weighed as heavily against the State as an intentional delay. *Perry*, 233 So. 3d at 756 (¶11) (citing *Barker*, 407 U.S. at 531).

¶45. Brown's trial was initially set for November 9, 2016. On the day of trial Brown requested a continuance so he could meet with the victim. The continuance was granted and the trial was reset for the next term. At the second trial date the State requested another continuance because Brown had not yet met with the victim. A week later the State requested and was granted a mental evaluation. While awaiting completion of the mental evaluation, the case was continued twice more.

¶46. Because Brown requested the first continuance, the time between that continuance request and the next trial date (ninety days) tolled the speedy-trial calculation. The remainder of the continuances were requested by the State. Normally, these continuances would weigh against the State. However, these continuances were requested so that Brown could meet with the victim and have a competency evaluation per his request—they were for his own benefit. Further, our Supreme Court has held that "a delay attributable to obtaining a mental evaluation requested by the defense is not counted against the State." *Id*. at 757 (¶15). In our speedy-trial calculation we weigh the following in Brown's favor: the time from Brown's arrest to the first trial setting, the unexplained continuance by the State, and the dates between Brown's mental evaluation and his final trial. Therefore, 383 of the 573 days weigh

15

against the State and in Brown's favor.

### c.    Assertion of Right

¶47.    A defendant's assertion of his right to a speedy trial weighs in his favor.  *Id.* at 758 (¶17).  Conversely, a defendant's failure to assert his right will weigh against him.  *Simmons*, 675 So. 2d at 687 (¶19) (The failure to file a motion to dismiss only slightly favors the State because the "primary burden is on the State.").

¶48.    Brown filed a "Motion for Discovery/Speedy Trial Demand" on September 7, 2016. He then filed a pro se "Motion to Dismiss for Failure to Provide a Fast and Speedy Trial" on June 27, 2017.  In between these motions Brown filed a "Motion for Mental Evaluation." "When a defendant moves for a speedy trial but simultaneously requests a continuance, the defendant's speedy-trial request cannot be viewed as a request for be tried promptly." *Perry*, 233 So. 3d at 758 (¶17).  Therefore, even though Brown had demanded a speedy trial, his request for a mental evaluation did not "manifest a desire to be tried promptly." *Id*.  Further, counsel for Brown withdrew his *"*Motion to Dismiss" on August 27, 2017.  Therefore, this factor weighs in favor of the State.  *Whitaker v. State*, 757 So. 2d 1060, 1063 (¶9) (Miss. Ct. App. 2000) (explaining that the defendant's withdrawal of demands for speedy trial and agreement of continuances after asserting said motions benefitted the State).

### d.    Prejudice

¶49.    The defendant bears the burden of persuasion under the prejudice prong of the *Barker* analysis for determining whether the defendant was denied the right to a speedy trial. *Johnson v. State*, 68 So. 3d 1239, 1245 (¶16) (Miss. 2011).  The accused does not have to

16

make an affirmative demonstration of prejudice to prove that his right to a speedy trial has been violated. *Id*. at 1244 (¶15). "However, without a showing of any prejudice, this prong of the balancing test cannot weigh in favor of the defendant." *Id*. Prejudice may be demonstrated by: (1) pretrial incarceration; (2) anxiety and concern of the accused; or (3) impairment of the defense. *Perry*, 233 So. 3d at 759 (¶19).

¶50. Brown alleges that his defense was impaired "due to the fact that the actual perpetrator of this crime, Marcus, had disappeared." There is no evidence in the record that Brown tried to subpoena Marcus or made any attempt at all to locate him. We find this claim without merit.

¶51. Brown also alleges that his defense was impaired because Lamonica originally signed an affidavit attesting that the charges were a misunderstanding, which she later recanted. For speedy trial purposes, changes in a witness's testimony are not necessarily due to the passage of time and do not, by themselves, constitute proof of prejudice due to delay. *Miller v. State*, 956 So. 2d 221, 225 n.10 (Miss. 2007).

¶52. Brown failed to demonstrate he suffered prejudice. Without a showing of prejudice, Brown cannot make out a claim of a due process violation. *Simmons*, 678 So. 2d at 687 (¶20).

¶53. The only *Barker* factor that weighs in Brown's favor is the length of delay which triggered the *Barker* analysis. All of the other factors weigh against Brown and in favor of the State. Based upon a balance of the four *Barker* factors, we hold that Brown was not deprived of his constitutional right to a speedy trial.

17

# CONCLUSION

¶54.    For the above reasons, we affirm the conviction.

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD, J. LAWRENCE, J., NOT PARTICIPATING.**

**CARLTON, P.J., DISSENTING:**

¶55.    I respectfully dissent from the majority's opinion affirming the trial court's judgment. Upon review, I find that there was no evidence of any deadly weapon used and that, based on the evidence presented, the jury could have found Brown guilty of simple domestic violence. I therefore find that the trial court erred in failing to give Brown's requested lesser-included-offense jury instruction for simple domestic violence. Accordingly, I would reverse Brown's conviction and remand this case for a new trial.

¶56.    This Court employs a de novo review of a defendant's claim that he was entitled to a lesser-included-offense instruction. *Sharkey v. State*, 265 So. 3d 151, 157 (¶24) (Miss. 2019). The supreme court has explained that in order "[t]o be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013) (internal quotation mark omitted).

¶57.    At trial, Lamonica testified about the severity and nature of the injuries she suffered. Lamonica stated that Brown grabbed her from behind and they fought a little bit, then they

18

fell to the floor. According to Lamonica, once she and Brown were on the floor, Brown tightened his grip around her neck and choked her. Lamonica testified that Brown's grip was "much tighter" once they fell to the floor "because I was fighting with him." When asked by the State if she passed out, Lamonica replied: "I don't know. . . . I can't remember." However, Detective Christopher Brown testified that when he interviewed Lamonica, she told him that Brown's grip loosened when she and Brown fell to the floor, rather than tightened. Dr. Steven Boskovich, the emergency-room physician who treated Lamonica, testified that Lamonica reported to him that Brown "grabbed her from behind and choked her briefly, only for a few seconds. He did have his forearm around her neck but she does not remember any pressure to the back of her neck. She did not lose consciousness." Brown testified at trial that he never laid a hand on Lamonica.

¶58. The transcript reflects that at the jury-instruction conference, Brown requested instruction D-11 on the lesser-included offense of simple domestic violence. Instruction D-11 stated that if the jury failed to find Brown guilty of aggravated domestic violence, it could determine whether Brown was guilty of simple domestic violence by considering whether the evidence proved beyond a reasonable doubt that

1.      On or about February 3, 2016, in Jackson County, Mississippi;

2.      James Devon Brown attempted to cause or purposely, knowingly or recklessly caused bodily injury to Lamonica Bodie, or

3.      James Devon Brown attempted by physical menace to put Lamonica Bodie in fear of imminent serious bodily harm;

4.      When at the time, he, the said James Brown was in a dating relationship with Lamonica Bodie[.]

19

The State argued that instruction D-11 should be denied because no "evidence of anything other than aggravated assault" had been presented to the jury. The State asserted that "[t]he defense in this case is that the defendant didn't do it. So, . . . there's been no evidence of simple assault." Brown's attorney argued that Brown was entitled to the instruction "based on Ms. Bodie's testimony." Brown's attorney also argued that the State has not "proven strangulation. That there was an argument, that maybe she felt like he was threatening her in some way, but I think the jury is entitled to see the lesser included instruction." The record reflects that the finding of aggravated domestic assault versus simple domestic assault largely rests upon the jury's determination of the credibility of Lamonica.

¶59. After an overnight recess, the trial court ultimately refused instruction D-11, explaining:

> I have tried to look at the evidence in the light most favorable to the defendant, how a jury could possibly find him guilty of the lesser included offense. The testimony is clearly that, from the victim, that he choked her, if not to unconsciousness, almost to unconsciousness. The defendant's testimony is he never touched her. So I don't see where there's any evidence at all in the record of a simple assault, so the instruction is refused.

¶60. Mississippi Code Annotated section 97-3-7(3)(a)(i) and (iii) provide that a person is guilty of simple domestic violence in the following circumstances:

> (a) When the *offense is committed against* a current or former spouse of the defendant or a child of that person, a person living as a spouse or who formerly lived as a spouse with the defendant or a child of that person, a parent, grandparent, child, grandchild or someone similarly situated to the defendant, *a person who has a current or former dating relationship with the defendant*, or a person with whom the defendant has had a biological or legally adopted child, a person is guilty of simple domestic violence who:

(i)     Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another;

. . . .

(iii)   Attempts by physical menace to put another in fear of imminent serious bodily harm.

Miss. Code Ann. § 97-3-7(3) (Rev. 2014) (emphasis added).  On appeal, Brown asserts that a reasonable juror could have determined that, contrary to Brown's testimony, a physical altercation did occur and Brown touched Lamonica; that Brown caused or attempted to cause bodily injury during the altercation by grabbing Lamonica or otherwise during their fight; but that Brown did not intentionally strangle Lamonica as she claimed.

¶61.    Although Brown testified at trial that no altercation occurred, the supreme court has held that "a criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories." *Brown v. State*, 39 So. 3d 890, 899 (¶34) (Miss. 2010) (quoting *Reddix v. State*, 731 So. 2d 591, 593 (¶9) (Miss. 1999)).  The supreme court further stated that it is

> an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied this fundamental right.

*Chinn v. State*, 958 So. 2d 1223, 1225 (¶13) (Miss. 2007) (quoting *O'Bryant v. State*, 530 So. 2d 129, 133 (Miss. 1988)).  Additionally, "where there is serious doubt as to whether a requested instruction should be given, doubt should ordinarily be resolved in favor of the accused." *Lenard v. State*, 552 So. 2d 93, 96 (Miss. 1989).  We further recognize that "[t]he jury must weigh witness testimony and determine its credibility." *Osborne v. State*, 54 So.

3d 841, 846 (¶21) (Miss. 2011).

¶62.    After reviewing the testimony, I find that there was sufficient evidence at trial to support Brown's lesser-included-offense jury instruction. *See Davis v. State*, 909 So. 2d 749, 754 (¶19) (Miss. Ct. App. 2005) (finding evidentiary support in the record for a simple assault instruction where no deadly weapon was offered into evidence and the defendant testified that the victim "was cut by a broken baseball trophy while they fought, rather than purposefully cut by the defendant with a razor"); *see generally Anderson v. State*, 102 So. 3d 304, 310 (¶21) (Miss. Ct. App. 2012) (finding sufficient evidence presented at trial to convict the defendant of domestic violence where testimony showed that the defendant bit the victim).  I would therefore reverse Brown's conviction and remand this case for a new trial.

**McDONALD, J., JOINS THIS OPINION IN PART.**